UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ESTEBAN GODINEZ GODINEZ,

Petitioner(s),

v.

WARDEN-FACILITY ADMINISTRATOR OF NORTHWEST PROCESSING CENTER,

Respondent(s).

CASE NO. C26-3069-KKE

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner has been detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") since July 2026, and an immigration judge ("IJ") denied bond because she found that Petitioner was a flight risk. Because the factors considered by the IJ do not rationally bear on Petitioner's likelihood to appear for immigration proceedings, the Court finds that the IJ abused her discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government to release Petitioner from custody.

## I. BACKGROUND

Petitioner Esteban Godinez Godinez, a native and citizen of Mexico, was six when he entered the United States without inspection, admission, or parole in December 1997. *See* Dkt. No. 1-1 at 3, Dkt. No. 10 at 20, Dkt. No. 7 ¶ 3. Since that time, he has lived with his family in Tillamook, Oregon, where Petitioner graduated from Tillamook High School and two of

Petitioner's younger siblings were born. Dkt. No. 1-1 at 3–5, 12, 15; Dkt. No. 10 at 20–21, 24. At some point, Petitioner was granted Deferred Action for Childhood Arrivals ("DACA") and employment authorization. Dkt. No. at 3, 9; Dkt. No. 10 at 21, 23. He obtained an Oregon driver's license, started a family business, worked and paid taxes. Dkt. No. 1-1 at 3, 9–10, 17–23; Dkt. No. 10 at 20–21. Later, Petitioner's DACA appears to have expired; he recently reapplied for DACA and work authorization in 2026 and contends those applications are being processed by USCIS. Dkt. No. 10 at 23, 39–42. Attached to his sworn declaration in support of his petition (Dkt. No. 1-1), Petitioner submitted numerous letters of support from family and long-time friends from Tillamook; they describe Petitioner as an established and hard-working member of the community and a relied-upon member of his family. *See id.* at 25–41.

Petitioner was charged with misdemeanor "unlawful possession of cocaine" in Tillamook, Oregon, in December 2025, but the charge was dismissed on July 6, 2026, after Petitioner successfully completed a diversion program. Dkt. No 1-1 at 4, 49–51. Otherwise, Petitioner has no criminal record.

On July 15, 2026, Petitioner was arrested and detained by Immigration and Customs Enforcement ("ICE") agents in Tillamook, Oregon. Dkt. No. 7 ¶ 4; *see* Dkt. No. 1-1 at 2. The declaration of United States Department of Homeland Security ("DHS") Officer Andre Ouk states that Petitioner's arrest was "pursuant to a Warrant for Arrest of Alien" and that ICE "issued Petitioner a Notice to Appear ("NTA")." *Id.* ¶ 4. Neither document appears in the record. ICE transported Petitioner to Tacoma, Washington, and booked him into the NWIPC. *Id.* ¶ 4, Dkt. No. 1-1 at 2.

On June 23, 2026, Petitioner appeared *pro se* before an IJ for a "master hearing" in his removal proceedings. Dkt. No. 7 ¶ 5; Dkt. No. 10 at 21. Petitioner requested the opportunity to obtain counsel, and the IJ rescheduled Petitioner's hearing for July 20, 2026. *Id.*

With several other members of the *Rodriguez Vazquez* Bond Denial Class, *see Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. 2025), Petitioner filed a petition for a writ of habeas corpus on July 17, 2026, which the Court granted on July 24, 2026, after finding Petitioner's detention without a bond hearing violated the Immigration and Nationality Act ("INA"). *Zamora-Cervantes v. Hernandez*, No. 26-cv-02540-TMC (W.D. Wash. July 24, 2026), Dkt. No. 11. The Court ordered that "[w]ithin fourteen days of receiving Petitioner Esteban Godinez Godinez's request for a bond hearing," the Government "must either release [Petitioner] or provide him a bond hearing under 8 U.S.C. § 1226(a)." *Id.* at 4.

On July 20, 2026, Petitioner again appeared *pro se* at a hearing before the IJ, who ordered Petitioner's removal to Mexico and granted Petitioner "voluntary departure with safeguards." Dkt. No. 7 ¶ 6; Dkt. No. 8-1; *see* Dkt. No. 10 at 21–22.[1] On July 30, 2026, Petitioner promptly appealed the IJ's order to the Board of Immigration Appeals ("BIA"). Dkt. No. 7 ¶ 7, Dkt. No. 10 at 22. Petitioner's appeal remains pending. *Id.*

Petitioner appeared *pro se* before the IJ for a bond hearing on August 14, 2026. Dkt. No. 7 ¶ 8; Dkt. No. 10 at 22–23. At the hearing, Petitioner presented evidence to the IJ regarding his personal and familial ties to the United States and Tillamook, Oregon. Among other things, Petitioner presented evidence that he has lived in the United States since he was 6 years old and in Tillamook since elementary school; he has two siblings who are United States citizens and prepared to act as his bond sponsors; he has lived at the same home for more than five years with his mother, brother, fiancée, and her children, and he will return to that home upon release on bond; he owns and runs a family business in Tillamook; his fiancée is a United States citizen; and

[1] In a sworn declaration attached to his traverse (Dkt. No. 10), Petitioner describes the circumstances of the July 20, 2026 removal hearing to explain why, misunderstanding the nature of the hearing, unprepared, and "under immense stress, nervousness, and confusion," Petitioner made inadvertent statements to the IJ that resulted, in Petitioner's view, in the IJ ordering removal and granting voluntary departure. *See* Dkt. No. 10 at 21–22. Review of that hearing and the IJ's resulting determination and order are not before the Court.

his family in Tillamook depends on his financial and emotional support. Dkt. No. 1-1 at 43–45; Dkt. No. 8-2. At the bond hearing, the Government "argued Petitioner had waived his right to apply for other forms of relief from removal and his appeal was unlikely to be granted." Dkt. No. 7 ¶ 8; Dkt. No. 8-2.

The IJ found that Petitioner was not a danger to the community. Dkt. No. 8-2; Dkt. No. 10 at 31. However, the IJ found that Petitioner was a flight risk based on Petitioner's appeal to the BIA of her order granting him voluntary departure. Dkt. No. 8-2. The IJ reasoned that Petitioner's appeal indicated he would not obey her orders. *Id.* The IJ also anticipated the Petitioner's appeal was unlikely to succeed and that the BIA would vacate the voluntary departure order in favor of the alternative order of removal. *Id.* The IJ did not discuss any other evidence with respect to her determination that Petitioner was a flight risk. *Id.* And on that basis, the IJ denied Petitioner's release on bond. *Id.*; Dkt. No. 10 at 31.

On August 28, 2026, Petitioner filed the petition for writ of habeas corpus. Dkt. No. 1. Petitioner remains in detention at the NWIPC. Dkt. No. 10 at 24; Dkt. No. 7 ¶ 9.

## II. ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

In *Zamora-Cervantes v. Hernandez*, the Court determined that Petitioner was a member of the *Rodriguez Vazquez* Bond Denial Class and constitutionally entitled to a bond hearing. *Zamora-*

*Cervantes v. Hernandez*, No. 26-cv-2540-TMC, Dkt. No. 11 at 3–4. Petitioner received a bond hearing before an IJ on August 14, 2026, at which Petitioner bore the burden of showing that he was not a danger to the community or a flight risk. *See Lopez v. Mullin*, No. C26-2495-KKE, 2026 WL 2529550, at *2 (W.D. Wash. Aug. 27, 2026); *c.f.*, *Seguro Serrano v. Scott*, No. 26-cv-01268-LK, 2026 WL 1674357, at *6–7 (W.D. Wash. May 26, 2026) (discussing circuit split regarding applicable standard of proof and that the Ninth Circuit has not directly addressed the issue). The question presented in the current habeas petition is whether the bond hearing and bond decision issued pass constitutional muster.[2]

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing for abuse of discretion, the district court does not reweigh the evidence, but determines whether the IJ applied the correct legal standard. *See id.* at 785.

In making bond determinations, IJs consider the so-called "*Guerra* factors":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

---

[2] The Government's return argues that the Court should require Petitioner to exhaust administrative remedies before considering the habeas petition on its merits. Dkt. No. 6 at 6. The Court waives prudential exhaustion in light of the irreparable injury that results from the continued unlawful detention the petition alleges. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *see also Garcia Ortiz v. Henkey*, No. 26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (waiving administrative exhaustion requirements because "given the broader irregularities in bond hearings across the country … administrative remedies in the immigration system appear no longer efficacious").

The IJ based her flight risk finding solely upon the fact that Petitioner had exercised his statutory right to appeal her order. *See Lopez-Angel v. Barr*, 952 F.3d 1045, 1048–49 (9th Cir. 2019) ("The INA gives a petitioner the right to appeal a final removal order. That right encompasses 'decisions refusing to reopen or reconsider such orders[.]'" (citation omitted) (quoting *Mata v. Lynch*, 576 U.S. 143, 148 (2015))). At the bond hearing, the IJ stated her findings with respect to Petitioner as follows:

> Now, I, although, am very concerned about your recent involvement with controlled substances, I will not find that you are a danger. I do find that you are a flight risk, and I am denying bond or any conditions, in that you have essentially only voluntary departure. … It sounds like you may not comply with that order, given the benefit you were granted. I have concerns that you will not comply. And it's on appeal. And it's, again, unlikely that appeal would be favorable. In fact, I would not be surprised if the Board revokes voluntary departure in that I granted it as a matter of discretion. But we'll see what happens. … I do not find that you've met your burden of proof as to flight risk.

Dkt. No. 8-2 at 13:09 to 14:47. The IJ did not discuss any of the *Guerra* factors.[3] Nor did the IJ engage with the evidence before her that was highly relevant to those factors—evidence such as Petitioner's decades-long residence in the United States, his extensive family ties to the country, that Petitioner's siblings and fiancée are United States citizens which may entitle him to reside permanently in the country, his record of lawful employment and owning of a small business, and his record of complying with court orders.

While an IJ is not required to "discuss each piece of evidence submitted" in assessing flight risk, an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[]" that undermines the assumption that the IJ considered the evidence and applied the correct standard. *Martinez*, 124 F.4th at 785. Here, the IJ failed to mention numerous highly probative facts, and instead based her finding on the fact of the voluntary departure order and Petitioner's

[3] In its return, the Government does not address the *Guerra* factors other than to argue the IJ properly considered Petitioner's appeal. Dkt. No. 6 at 9.

pending appeal of that order. But "the fact of an order is not, by itself, sufficient to deny bond." *Sales v. Johnson*, 323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2017) (citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011)). That a petitioner was denied cancellation of removal and he appealed or reserved appeal is not a factor *Guerra* instructs an IJ to consider. *See Recinos Acosta v. Warden Nw. Det. Ctr.*, No. 26-cv-01287-JHC, 2026 WL 1481474, at *5 (W.D. Wash. May 27, 2026) ("The IJ did consistently and explicitly consider and base her decision on the fact that Petitioner had, at the time, a final removal order. This is not a factor *Guerra* instructs the IJ to consider."); *Doroteo-Chaves v. Noem*, No. 26-cv-00049, 2026 WL 1031190, at *7 (D. Nev. Apr. 16, 2026) (finding an IJ's denial of a petitioner's release on bond "legally erroneous and an abuse of discretion" where "the IJ appear[ed] to have found Petitioner was a flight risk based solely on the fact that he was denied cancellation of removal, and he had reserved appeal."). Similarly, "the unlikelihood of relief from removal or adjustment of status … alone is insufficient to deny bond." *Moreno Flores v. Santacruz*, No. 26-cv-03393, 2026 WL 2691657, at *4 (C.D. Cal. Sep. 14, 2026); *Abdelmasseh v. Scott*, No. C26-1681-KKE, 2026 WL 1815279, at *4 (W.D. Wash. June 4, 2026).

Because the Court finds that the IJ did not apply the correct legal standard and the record unequivocally contradicts the IJ's flight-risk finding, the Court concludes that the IJ abused her discretion in denying bond. Petitioner's continued detention would serve no immigration purpose, and the Court will order Petitioner's release. *See Garcia Miranda v. Hernandez*, No. 26-cv-00906-JNW, 2026 WL 1328227, at *4–5 (W.D. Wash. May 13, 2026); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court further ORDERS:

(1) The Government shall release Petitioner no later than October 7, 2026, on reasonable conditions of supervision.

(2) The Government shall file a status report no later than October 9, 2026, confirming compliance with this order.

Dated this 6th day of October, 2026.

Kymberly K. Evanson
United States District Judge